# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AL-JALEEL SINGLETON** | : | **CIVIL ACTION** |
| *Plaintiff pro se* | : | |
| | : | |
| **v.** | : | **NO. 24-CV-0381** |
| | : | |
| **LEHIGH COUNTY**, *et al.*, | : | |
| *Defendants* | : | |

# M E M O R A N D U M

NITZA I. QUIÑONES ALEJANDRO, J.                                        MARCH 18, 2024

Currently before the Court are a *motion to proceed in forma pauperis*, Prisoner Trust Fund Account Statement, and an Amended Complaint[1] filed by Plaintiff Al-Jaleel Singleton, a self-represented individual currently incarcerated at the Lehigh County Jail ("LCJ").  Singleton brings constitutional claims pursuant to 42 U.S.C. § 1983 for damages to compensate him for injuries he sustained when he slipped and fell on the floor at LCJ.   For the following reasons, the Court will grant Singleton leave to proceed *in forma pauperis* and will dismiss his Amended Complaint.

## I.    FACTUAL ALLEGATIONS[2]

Singleton names the following Defendants in his Amended Complaint:  (1) Lehigh County; (2) Janine Donate, identified as Director of LCJ; (3) Steven Miller, identified as Deputy Warden

---

[1]     Singleton initiated this civil action by submitting a letter to the Clerk's Office seeking to file grievances, that the Court did not receive, in support of a complaint. (ECF No. 1.)  Although the letter was not a proper complaint, the Clerk's Office, consistent with its obligations under Federal Rule of Civil Procedure 5, docketed it as a complaint and opened the instant civil action.  In a January 31, 2024 Order, the Court informed Singleton that, if he sought to proceed with a civil action, he was required to file a proper complaint and either pay the applicable fees or move to proceed *in forma pauperis*.  Singleton complied with the order.

[2]     The following allegations are taken from the Amended Complaint and documents attached to the Amended Complaint.  The Court adopts the pagination supplied to the Amended Complaint by the CM/ECF docketing system.

of Treatment; (4) Cliff Knappenberger, identified as an Internal Affairs Investigator; (5) Gonja Yayla, identified as a Health Services Administrator; and (6) Officer Ocasio.  (Am. Compl. at 1-4.)  The individual Defendants are sued in their individual and official capacities.  (*Id.*)  Singleton alleges that his constitutional rights were violated when he slipped and fell in a hallway at LCJ, that he was not given adequate medical care for his injury, and that his related grievances were not properly handled.

The events giving rise to Singleton's claims primarily took place on October 30, 2023, at LCJ in the hallway between Block 3A and Block 3D "in front of the bubble".  (*Id.* at 5.)  On that date, Defendant Officer Ocasio asked Singleton "to go to the bubble and get the move sheet for block 3A." (*Id.* at 6.)  While completing that task, Singleton slipped and fell on a "wet spot on the floor," injuring his right knee.  (*Id.*)  Ocasio called a "code blue," apparently to obtain medical assistance for Singleton.  (*Id.*)

After he fell, Singleton was treated by physician assistants, provided with a knee brace, and given aspirin for pain.  (ECF No. 6-1 at 10; *see also* Am. Compl. at 6.)  Medical staff allegedly told Singleton that the treatment they provided was "all that they could do for [him]" even though Singleton never saw a doctor.  (ECF No. 6-1 at 10.)  Singleton alleges that he has been "in extreme pain for over the past three months" because of his injury.  (*Id.*)  He claims he filed grievances about these events, but that Defendant Knappenberger denied the grievances for improper reasons.  (*Id.*)  Singleton also "wrote to" Defendant Director Donate "for a formal remedy" on one of his grievances, apparently without success.  (*Id.* at 11.)

Singleton claims he was injured because the "third floor hallway worker" failed to post a "wet floor caution sign" in the area where he fell, which he attributes to the failure of LCJ "officials" to ensure that inmate workers were properly trained for their custodial maintenance

duties, including proper use of such signs.  (ECF No. 6-1 at 9.)  He adds that LCJ policy prohibits inmates from handling paperwork dealing with institutional movement (the task he was asked to complete) and also requires a "wet floor sign" to be displayed when floors and hallways are mopped (which did not happen on the date in question).  (*Id*. at 12.)  LCJ policy also requires inmates to complete sick call requests should they require medical assistance.  (*Id.*)  Singleton claims, however, that "Lehigh County medical staff" and "Lehigh County administration staff" were negligent in following their policies pertaining to medical treatment and grievances.  (*Id.*)

Singleton brings claims for unconstitutional punishment based on the above allegations. (Am. Compl. at 3.)  He seeks monetary damages to compensate him for pain and suffering, "any future medical treatment," and to repair his knee.  (*Id.* at 6.)

## II.     STANDARD OF REVIEW

The Court grants Singleton leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim.   The determination whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). This requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts

---

[3]     However, as Singleton is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

3

sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Singleton is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021).

Further, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).  ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.");  *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").

### III.   DISCUSSION

#### A.  Section 1983 Claims

Singleton brings his constitutional claims pursuant to 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element and, therefore, a plaintiff must allege how each individual defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  Additionally, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d

234, 243 (3d Cir. 2017).  A supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015), (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "[A] supervisor may [also] be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id*.

To plead a § 1983 claim against a municipal entity, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Claims against municipal employees in their official capacity are governed by the same standard, since "official capacity" claims are treated the same as claims against the governmental entity that employs those defendants.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  However, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."  *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable")).

### 1. Claims Based on the Slip and Fall

Since Singleton was a pretrial detainee at the time of the slip and fall, the Fourteenth Amendment applies to his claim of unconstitutional punishment predicated on his fall.[4]  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).  "Unconstitutional punishment typically includes both objective and subjective components."  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."  *Id.* (internal quotations and alterations omitted).  To satisfy the subjective component of the analysis in this Circuit, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Here, Singleton alleges that his rights were violated when he was injured because unidentified officials failed to train inmate workers to use a "wet floor sign" when mopping the

---

[4]     The Amended Complaint reflects that Singleton was both a pretrial detainee and a convicted and sentenced prisoner during the course of events giving rise to his claims.  (Am. Compl. at 5.)  The publicly available docket for Singleton's criminal proceeding establishes that he was convicted and sentenced on February 28, 2024.  *Commonwealth v. Singleton*, No. CP-39-CR-0000933-2023 (C.P. Lehigh).  Accordingly, he was a pretrial detainee on October 30, 2023, at the time he fell on the floor at LCJ, so claims predicated on this condition are governed by the Fourteenth Amendment and not the Eighth Amendment.

floor. "[M]any . . . courts, including the [United States Court of Appeals for the] Third Circuit, have reasoned that slip-and-fall injuries stemming from slippery prison surfaces are more within the realm of ordinary negligence," and are, therefore, insufficient to support a constitutional claim. *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 517 & n.27 (E.D. Pa. 2019); *see, e.g.*, *Montgomery v. Aparatis Dist. Co.*, 607 F. App'x 184, 186-87 (3d Cir. 2015) (*per curiam*) (affirming dismissal of claims under § 1915(e)(2)(B)(ii) where inmate alleged he slipped and fell in water pooling near water dispensers, where the "allegations do not plausibly suggest either that ECCF officers permitted the water to pool intentionally to punish the detainees or that the officers' alleged tardiness in responding to the hazard was so excessive in light of their legitimate purpose for providing the dispensers as to amount to punishment").

Similarly, Singleton's allegations about the conditions that led to his fall — *i.e.*, that a cautionary sign should have been displayed to provide notice of the wet floor — at most rise to the level of negligence, rather than deliberate indifference and, therefore, does not state a plausible constitutional violation. *See Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (*per curiam*) (holding that inmate failed to state a claim based on failure to maintain walkways upon which he slipped and fell because his allegations "assert[ed] a simple negligence claim at most"); *see also Daniels v. Williams,* 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable under § 1983 because "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"). That is so even taking as true that various LCJ policies were not complied with on the date in question, since a violation of prison policy does not, on its own, equate to a constitutional violation. *Bowman v. Wetzel*, No. 20-00135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) ("As many courts have held, corrections officials cannot be held liable for failing to conform to

procedures outlined in inmate handbooks and other internal prison procedures."); *Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *9 (D.N.J. Aug. 31, 2006) ("[A] prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.").

### 2. Claims Based on Adequacy of Medical Care

The Court also understands Singleton to be asserting constitutional claims based on inadequate medical care. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).[5] A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement

---

[5]     It appears that Singleton was a pretrial detainee and a convicted and sentenced prisoner during the course of the events giving rise to this claim. *See supra* n.4. The distinction is irrelevant for purposes of analyzing claims based on the adequacy of medical care, however, because the governing legal standard is the same under either amendment. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis).

regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Here, Singleton implies that he should have received additional medical care beyond what was provided after his fall because he did not see a doctor and continued to experience pain in his knee.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'"  *Davis*, 597 F. App'x at 45 (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).  Here, even assuming that Singleton's injured knee rises to the level of serious, his allegations make clear he received medical treatment for his injury, since he was seen by physician's assistant and provided with a knee brace, and that he received aspirin for his pain.  He alleges that he never saw a doctor, but it is unclear what additional treatment he believes should have been required under the circumstances.  Although Singleton alleges that his knee is still in pain, his allegations do not reflect that any of the named Defendants were aware of this fact or, if they were, how their actions or inactions were reflective of deliberate indifference.  That is especially so for those Defendants who are not medically trained, since it is generally appropriate for nonmedical defendants to defer decisions about medical care to medical professionals.  *See Spruill*, 372 F.3d at 236 ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Durmer  v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.").  Singleton has also failed to

attribute any inadequacies in treatment to a municipal policy or custom so as to state a plausible basis for municipal liability.

In sum, Singleton's allegations fail to support an inference that any inadequacies in his medical care rise to the level of deliberate indifference, as opposed to negligence, or that any such inadequacies may be fairly attributed to any of the named Defendants.  Accordingly, he has not stated a plausible claim for deliberate indifference to his serious medical needs.

### 3.  Claims Based on Grievances

Certain of Singleton's constitutional claims, including his claims against Defendant Knappenberger are predicated entirely on alleged errors or improprieties in how his grievances were handled.  "[P]risoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by Singleton predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).  Furthermore, a prison official's involvement in the grievance process generally does not establish personal involvement in the

underlying constitutional violation.  *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").  Accordingly, the Court will dismiss Singleton's claims that are based on the inadequate handling of his grievances because those claims are not plausible.

## B.  Negligence Claims

Although he does not state so explicitly, it is possible that Singleton also intends to raise negligence claims pursuant to Pennsylvania law based on the events described in his Amended Complaint.  *See Vogt*, 8 F.4th at 185 (explaining that, when dealing with *pro se* filings, courts should "apply the relevant legal principle even when the complaint has failed to name it" (internal quotations omitted)).  The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a).[6]  This provision grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."  *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).  For diversity purposes, an individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).

---

[6]     The Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims, having dismissed all of Singleton's federal claims.

"[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). Since the Amended Complaint is silent on the citizenship of the parties, the Court cannot exercise jurisdiction over any state law claims.

### IV.   CONCLUSION

For the foregoing reasons, the Court will grant Singleton leave to proceed *in forma pauperis* and dismiss his Amended Complaint. Singleton's constitutional claims based on the conditions that caused him to slip and fall on the floor and his claims based on grievances and/or the grievance process will be dismissed with prejudice because the Court concludes that amendment of those claims will be futile. He will, however, be given leave to file an amended complaint as to his claim for deliberate indifference to his medical needs in the event he can allege additional details to state a claim against any of the Defendants, and to cure the jurisdictional defects in any state law claims he seeks to raise. Alternatively, Singleton may move to withdraw this case without prejudice in the event he seeks to pursue his negligence claims in state court.[7] An appropriate Order follows, which provides further instruction as to amendment.

*NITZA I. QUIÑONES ALEJANDRO, J.*

---

[7]     The Court renders no opinion on the merits of any such claims.