IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AL-JALEEL SINGLETON** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | **NO. 24-CV-0381** |
| | : | |
| **LEHIGH COUNTY,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                           APRIL 9, 2024

      Currently, before the Court is a Second Amended Complaint ("SAC") filed by Plaintiff Al-Jaleel Singleton, which asserts constitutional and negligence claims for damages to compensate Singleton for the alleged injuries he sustained when he slipped and fell on the floor at the Lehigh County Jail ("LCJ"). For the reasons set forth, the Court will dismiss the SAC.

**I.       FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

      In a prior pleading, Singleton alleged that he slipped on the floor at LCJ, allegedly due to the absence of a cautionary sign, and that he was provided inadequate medical treatment for an injury to his right knee that he sustained in the fall. (Am. Compl., ECF No. 6.) He named six Defendants: (1) Lehigh County; (2) Janine Donate, identified as Director of LCJ; (3) Steven Miller, identified as Deputy Warden of Treatment; (4) Cliff Knappenberger, identified as an Internal Affairs Investigator; (5) Gonja Yayla, identified as a Health Services Administrator; and (6) Officer Ocasio. (Am. Compl. at 1-4.) After granting Singleton leave to proceed *in forma pauperis*, the Court dismissed Singleton's Amended Complaint (his governing pleading at the

---

[1]    The Court adopts the pagination supplied to Singleton's filings by the CM/ECF docketing system.

1

time) for failure to state a claim upon statutory screening. *Singleton v. Lehigh County*, No. 24-CV-0381, 2024 WL 1163526, at *1 (E.D. Pa. Mar. 18, 2024).

The Court initially concluded that Singleton's allegations about the circumstances that led to his fall at most gave rise to an inference of negligence, which is insufficient to support a constitutional claim. *Id.* at *3-*4. Next, Singleton's implication that "that he should have received additional medical care beyond what was provided after his fall because he did not see a doctor and continued to experience pain in his knee" did not plausibly allege a deliberate indifference claim because "he was seen by physician's assistant and provided with a knee brace[,] . . . received aspirin for his pain" and it was "unclear what additional treatment he believe[d] should have been required under the circumstances." *Id.* at *4. Singleton also failed to allege that any of the named Defendants knew he was still in pain, that any of the non-medical Defendants could be held responsible for failing to provide additional care under the circumstances, or that a municipal policy or custom was responsible for any claimed inadequacies. *Id.* The Court concluded that any claims based on "errors or improprieties in how [Singleton's] grievances were handled" were implausible and that, to the extent Singleton was alleging any state law negligence claims, he had not alleged an independent basis for the Court's jurisdiction over those claims. *Id.* at *5.

Singleton's claims were dismissed with prejudice except for his deliberate indifference to medical needs claims, which he was permitted to amend. *Id.* at *6. Singleton was instructed, if he filed an amended complaint, to identify all the defendants in the caption and body of any amended pleading and to clearly state the factual basis for his claims against each defendant. (ECF No. 9 at 3.) In the interim, Singleton was transferred from LCJ to the custody of the Pennsylvania Department of Corrections in late February or early March 2024, following his sentencing on

February 28, 2024.  (*See* ECF Nos. 6, 7); *Commonwealth v. Singleton*, No. CP-39-CR-0000933-2023 (C.P. Lehigh).  He filed the pending SAC after his transfer.[2]

The SAC names the following Defendants:  (1) Lehigh County; (2) Lehigh County Medical Staff; (3) Yayla Gonja; and (4) Officer Ocasio.  (SAC, ECF No. 11, at 1-3.)  The individual Defendants are named in their individual and official capacities.  (*Id.*)  Singleton again alleges that on October 30, 2023, he injured his right knee when he slipped and fell on the floor at LCJ.  (*Id.* at 4-5.)  Defendant Ocasio "was there" when Singleton fell.  (*Id.* at 5.)  Singleton was given a knee brace after his fall.  (*Id.*)  On February 26, 2024, two days before he was sentenced, he saw a specialist and learned that he required surgery to repair a torn meniscus in his knee.  (*Id.*)  At some point after he was sentenced, Singleton was transferred to the State Correctional Institution at Smithfield, where he is currently housed; his medical records, however, were not transferred with him.  (*Id.*)

Singleton alleges that the medical staff at SCI Smithfield "had to contact Lehigh County medical staff" on March 12, 2024 to obtain records of the medical care provided to Singleton after he fell, including "MRI results that were taken on [February 26, 2024] at St. Luke's" in Allentown.  (SAC, ECF No. 10, at 2.)  The only medical records sent by LCJ pertained to care Singleton received for his blood pressure and did not include "any medical records for pain medications that he . . . received while in Lehigh County custody." (*Id.*)  It is unclear whether the MRI records and records for other treatment Singleton received following the fall were provided following the request from SCI Smithfield and, if so, when.  Singleton alleges that the failure to transfer his

---

[2]     Singleton used the Court's form complaint to prepare his SAC.  (ECF No. 11.)  He also filed a separate document expressing his intention to amend and providing additional allegations and legal arguments in support of his claims.  (ECF No. 10.)  Although the Federal Rules of Civil Procedure do not contemplate piecemeal filing of pleadings, the documents were filed sufficiently close in time that the Court will consider the allegations in both documents in determining whether Singleton has alleged a plausible claim.

3

medical records along with him caused "unreasonable delay" in his care and/or the provision of "grossly inadequate medical care" that caused him "to needlessly suffer severe pain." (*Id.* at 1.)

Based on the above allegations, Singleton brings constitutional claims for deliberate indifference pursuant to 42 U.S.C. § 1983 as well as claims for negligence. (SAC, ECF No. 11, at 3-4.) He seeks an award of damages and summary judgment on his claims.[3] (*Id.* at 5.)

## II.     STANDARD OF REVIEW

Since Singleton is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the SAC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Rule 12(b)(6) requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Singleton is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021).

---

[3]     Singleton included several pages of "legal statements" in support of his claims. (SAC, ECF No. 10, at 3-7.) The Court disregards these statements when assessing whether Singleton has stated a plausible claim. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (in assessing whether a pleading states a claim "we accept the factual allegations contained in the Complaint as true, but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements").

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").

### III. DISCUSSION

#### A. Section 1983 Claims

Singleton brings his constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element and, therefore, a plaintiff must allege how each individual defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Additionally, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). A supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). (quoting *A.M. ex rel. J.M.K.*

5

*v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "[A] supervisor may [also] be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.

To plead a § 1983 claim against a municipal entity, such as Lehigh County, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). Claims against municipal employees in their official capacity are governed by the same standard, since "official capacity" claims are treated the same as claims against the governmental entity that employs those defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). However, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).

### 1. Claims Based on the Slip and Fall

Although the Court previously dismissed with prejudice all constitutional claims based on the conditions that caused Singleton's fall, *see Singleton*, 2024 WL 1163526, at *6 ("Singleton's constitutional claims based on the conditions that caused him to slip and fall on the floor . . . will be dismissed with prejudice because the Court concludes that amendment of those claims will be futile."), Singleton appears to be reasserting these claims in his SAC. Since Singleton was a pretrial detainee at the time of the slip and fall, the Fourteenth Amendment applies to his claim of

unconstitutional punishment predicated on his fall.[4]  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).  "Unconstitutional punishment typically includes both objective and subjective components."  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."  *Id.* (internal quotations and alterations omitted).  To satisfy the subjective component of the analysis in this Circuit, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

As previously explained to Singleton, *Singleton*, 2024 WL 1163526, at *3, "many . . . courts, including the [United States Court of Appeals for the] Third Circuit, have reasoned that slip-and-fall injuries stemming from slippery prison surfaces are more within the realm of ordinary negligence," and are therefore insufficient to support a constitutional claim.  *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 517 & n.27 (E.D. Pa. 2019); *see, e.g.*, *Montgomery v. Aparatis Dist. Co.*, 607 F. App'x 184, 186-87 (3d Cir. 2015) (*per curiam*) (affirming dismissal of claims under § 1915(e)(2)(B)(ii) where inmate alleged he slipped and fell in water pooling near water dispensers,

---

[4]   Since Singleton was not sentenced until February 28, 2024, he was a pretrial detainee on October 30, 2023, when he fell on the floor at LCJ, so claims predicated on this condition are governed by the Fourteenth Amendment.

where the "allegations do not plausibly suggest either that ECCF officers permitted the water to pool intentionally to punish the detainees or that the officers' alleged tardiness in responding to the hazard was so excessive in light of their legitimate purpose for providing the dispensers as to amount to punishment"). Accordingly, since nothing in Singleton's SAC alleges any basis from which this Court could infer that his fall was the result of deliberate indifference, his claims based on the conditions that led to his fall again fail. *See Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (*per curiam*) (holding that inmate failed to state a claim based on failure to maintain walkways upon which he slipped and fell because his allegations "assert[ed] a simple negligence claim at most"); *see also Daniels v. Williams,* 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable under § 1983 because "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property").

### 2. Claims Based on Adequacy of Medical Care

Singleton also asserts constitutional claims based on inadequate medical care. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).[5] A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious,

---

[5] It appears that Singleton was both a pretrial detainee and a convicted and sentenced prisoner during the course of the events giving rise to this claim. The distinction is irrelevant for purposes of analyzing claims based on the adequacy of medical care, however, because the governing legal standard is the same under either amendment. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same).

. . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

As with his prior pleading, Singleton fails to explain how any alleged inadequacies or delays in his medical care amount to deliberate indifference. To the contrary, his own allegations reflect that he was given medical treatment after the fall, and that he also saw a specialist, who performed an MRI and determined that he required surgery. None of his allegations support an inference that any of the named Defendants were deliberately indifferent by not providing additional care or that any municipal policy or custom caused any such deliberate indifference to Singleton's medical needs. Indeed, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Davis*, 597 F. App'x at 45 (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

Furthermore, although Singleton alleges that the delayed medical records caused "unreasonable delay" and/or the provision of "grossly inadequate medical care" that caused him

9

"to needlessly suffer severe pain," (SAC, ECF No. 10, at 1), he provides no further development of or context for those allegations. For instance, while Singleton asserts that personnel at SCI Smithfield requested his records from LCJ on March 12, approximately fourteen days after he was sentenced, it is not clear how long the medical records were delayed by LCJ and why he believes that the medical care he received following his relatively recent transfer was inadequate under the circumstances. Nor is there any allegation that any individual deliberately declined to transfer Singleton's records in a manner that would support an inference of deliberate indifference, or that a municipal policy or custom of Lehigh County was the cause of the delay.

In sum, Singleton's allegations fail to support an inference that any alleged inadequacies in his medical care rise to the level of deliberate indifference, as opposed to negligence, or that any such inadequacies may be fairly attributed to Lehigh County, or any individual employed by Lehigh County. Accordingly, he has not stated a plausible claim for deliberate indifference to his serious medical needs. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### B. Negligence Claims

It is possible that Singleton is attempting to raise negligence claims based on the events described in the SAC. *See Vogt*, 8 F.4th at 185 (explaining that, when dealing with *pro se* filings, courts should "apply the relevant legal principle even when the complaint has failed to name it" (internal quotations omitted)). The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a).[6] This provision grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

---

[6] The Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims, having dismissed all of Singleton's federal claims.

between . . . citizens of different States." "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). For diversity purposes, an individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). Since the SAC is silent on the citizenship of the parties, the Court cannot exercise jurisdiction over any state law claims.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss the SAC. The Court concludes that any further opportunity to amend would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"). An Order follows, which dismisses this case.

*NITZA I. QUIÑONES ALEJANDRO, J.*